## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

**CHRIS TAYLOR,** Individually and on Behalf   *
of All Others Similarly Situated
16 Whitfield Rd     *
Baltimore, MD 21210
    *

     and     *

**KAREN MARKUS-HANDIS**, Individually
and on Behalf of All Others Similarly Situated, *
18755 Cape Sable Drive
Boca Raton, Florida 33498     *

     and     *

**KIRK HUDDLES,** Individually and on Behalf *
of All Others Similarly Situated
4302 Rugby Rd     *
Baltimore, MD 21220
    *

          Plaintiffs,     *

    vs.     *

**MARRIOTT INTERNATIONAL, INC.,**     *
10400 Fernwood Road
Bethesda, Maryland 20817     *
Montgomery County
    *

          Defendant.     *

Civil Action No. _____

JURY TRIAL DEMANDED

_____

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs, Chris Taylor, Kirk Huddles and Karen Markus-Handis individually and on behalf of all others similarly situated, upon personal knowledge of the facts pertaining to them and on information and belief as to all other matters (collectively "Plaintiffs"), and upon the investigation conducted by Plaintiffs' counsel, brings this class action complaint against Marriott International, Inc. ("Marriott" or "Defendant"), and alleges as follows:

**NATURE OF THE ACTION**

1.      This action arises from one of the largest data security breaches in U.S. history.  On November 30, 2018, Marriott announced that an unauthorized party had gained access to its Starwood Guest Reservation Database (the "Database") and copied the name, mailing address, phone number, email address, passport number, Starwood Preferred Guest ("SPG") account information,[1] date of birth, gender, arrival and departure information, reservation date, and payment card numbers and expiration dates (collectively, "Personal Information") of **500 million** guests (the "Data Breach" or "Breach").[2]

2.      Shockingly, Marriott's announcement revealed that the unauthorized access to its Database **began in 2014** and, thus, had gone on (allegedly) undetected for **four years**.

3.      The Data Breach affects all guests who stayed at a Starwood property, which includes W Hotels, St. Regis, Sheraton Hotels & Resorts, Westin Hotels & Resorts, Element Hotels, Aloft Hotels, The Luxury Collection, Tribute Portfolio, Le Méridien Hotels & Resorts, Four Points by Sheraton and Design Hotels, and even Starwood-branded timeshare properties. And the victims of the Breach are not limited to those customers enrolled in Marriott's SPG program.  According to Marriott, "[r]egardless of whether you are an SPG member, if you made a reservation on or before September 10, 2018 for a Starwood property, information you provided may have been involved."[3]  Again, the scope of the Data Breach cannot be understated: there are **half a billion** victims of Marriott's security failures.

---

[1]      SPG account information includes a guest's SPG account number, points balance, status level, and communication preferences.

[2]      *See*         http://news.marriott.com/2018/11/marriott-announces-starwood-guest-reservation-database-security-incident/ (last visited Dec. 1, 2018).

[3]      *See* https://answers.kroll.com/ (last visited Dec. 1, 2018).

4.      Marriott's November 30, 2018 announcement also included a clear admission by the company's CEO that Marriott's conduct fell well below the expected standard of care: "We fell short of what our guests deserve and what we expect of ourselves.  We are doing everything we can to support our guests, and using lessons learned to be better moving forward."[4]

5.      As the result of Marriott's failure to reasonably secure its Database, cybercriminals obtained the Personal Information of 500 million customers, including Plaintiffs and the other Class members, exposing them to an increased risk of fraud and identity theft, and causing them injuries and damages, including, but not limited to, the lost value of their Personal Information, and the lost time and expense necessary to protect themselves against the foreseeable fraud and identity theft that Marriott's conduct caused.  Plaintiffs and Class members are further damaged as their Personal Information remains in Marriott's possession, without adequate protection.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction under 28 U.S.C. §1332(a)(1) as modified by the Class Action Fairness Act of 2005, because Plaintiffs and Defendant are citizens of different states, there are more than 100 members of the classes, and the aggregate amount in controversy exceeds $5,000,000.00, exclusive of attorneys' fees, interest, and costs.

7.      Venue is proper in this District under 28 U.S.C. §1391 because Defendant engaged in substantial conduct relevant to Plaintiffs' claims within this District and are headquartered in this district.

---

[4]   *See*        http://news.marriott.com/2018/11/marriott-announces-starwood-guest-reservation-database-security-incident/ (last visited Dec. 1, 2018).

## PARTIES

8.      Plaintiff Chris Taylor resides in Baltimore, Maryland and is a citizen of the state of Maryland.  Plaintiff is a Starwood Preferred Guest whose American Express credit card is linked to his Starwood Preferred Guest account.  Plaintiff has stayed at Starwood properties throughout the Class Period (defined below).  In connection with each stay, Plaintiff provided Marriot with other forms of Personal Information.  Plaintiff believed that Marriot took all reasonable, necessary, legally required, and industry standard security measures to protect his Personal Information, and that his Personal Information would remain private.  As a result of Marriott's failure to protect his Personal Information, Plaintiff suffered injuries and damages, including, but not limited to, loss in value of his Personal Information, an increased risk of identity theft, and loss of time and money spent to protect herself from the foreseeable risk of fraud and identify theft.

9.      Plaintiff Karen Markus-Handis resides in Boca Raton, Florida and is a citizen of the state of Florida.  Plaintiff is a Starwood Preferred Guest whose American Express credit card is linked to her Starwood Preferred Guest account.  Plaintiff has stayed at Starwood properties throughout the Class Period (defined below).  In connection with each stay, Plaintiff provided Marriot with other forms of Personal Information.  Plaintiff believed that Marriot took all reasonable, necessary, legally required, and industry standard security measures to protect her Personal Information, and that her Personal Information would remain private.  As a result of Marriott's failure to protect her Personal Information, Plaintiff suffered injuries and damages, including, but not limited to, loss in value of her Personal Information, an increased risk of identity theft, and loss of time and money spent to protect herself from the foreseeable risk of fraud and identify theft.

10.     Plaintiff Kirk Huddles resides in Baltimore, Maryland and is a citizen of the state of Maryland.  Plaintiff is a Starwood Preferred Guest whose American Express credit card is linked

to his Starwood Preferred Guest account.  Plaintiff has stayed at Starwood properties throughout

the Class Period (defined below).  In connection with each stay, Plaintiff provided Marriot with

other forms of Personal Information.  Plaintiff believed that Marriot took all reasonable, necessary,

legally required, and industry standard security measures to protect his Personal Information, and

that his Personal Information would remain private.  As a result of Marriott's failure to protect his

Personal Information, Plaintiff suffered injuries and damages, including, but not limited to, loss in

value of his Personal Information, an increased risk of identity theft, and loss of time and money

spent to protect herself from the foreseeable risk of fraud and identify theft.

11.     Marriott International, Inc. is a Delaware corporation with its principle place of

business at 10400 Fernwood Road, Bethesda, Maryland 20817.  Marriott's securities trade on the

NASDAQ under the ticker symbol "MAR."

### SUBSTANTIVE ALLEGATIONS COMMON TO ALL COUNTS

**A.      Marriott International, Inc.**

12.     Marriott International, Inc. is a global lodging company with more than 6,700

properties, in 30 leading hotel brands, spanning 130 countries and territories.  These brands

include: BVLGARI Hotels & Resorts; The Ritz-Carlton; St. Regis; W Hotels; EDITION Hotels;

JW Marriott; The Luxury Collection; Marriott Hotels; Westin Hotels & Resorts; Le Meridien;

Renaissance Hotels; Sheraton Hotels & Resorts; Delta Hotels by Marriott; Marriott Executive

Apartments; Marriott Vacation Club; Autograph Collection Hotels; Tribute Portfolio; Design

Hotels; Gaylord Hotels; Courtyard by Marriott; Four Points by Sheraton; SpringHill Suites by

Marriott; Fairfield Inn & Suites by Marriott; Residence Inn by Marriott; TownePlace Suites by

Marriott; AC Hotels by Marriott; Aloft Hotels; Element; Moxy Hotels; and Protea Hotels.  Marriott

operates and franchises hotels and licenses vacation ownership resorts all around the world.

13.     On September 23, 2016, Marriott completed the acquisition of Starwood Hotels & Resorts Worldwide, LLC ("Starwood"), formerly known as Starwood Hotels & Resorts Worldwide, Inc., through a series of transactions, after which Starwood became an indirect wholly-owned subsidiary of Marriott.

14.     According to Marriott's 2017 Annual Report, Marriott reported nearly $23 billion in revenue, and boasted nearly 110 million Marriott Rewards, Ritz-Carlton Rewards and Starwood Preferred Guest members.  This was a sizable increase from the numbers reported in the 2016 Annual Report, which touted $17 billion in revenue, and 100 million Marriott Rewards, Ritz-Carlton Rewards and Starwood Preferred Guest members.[5]

15.     Marriott's website represents that "We hold ourselves to uncompromising ethical and legal standards."  The website also proclaims that, "Our core values make us who we are. As we change and grow, the beliefs that are most important to us stay the same—putting people first, pursuing excellence, embracing change, acting with integrity and serving our world."[6]

16.     In the Marriott Group Global Privacy Statement, last updated on May 18, 2018 ("Privacy Statement"), Marriott represents that "We seek to use reasonable organizational, technical and administrative measures to protect Personal Data."[7]  Marriott's Privacy Statement further represents that "We seek to use reasonable organizational, technical and administrative

---

[5]     *See*  http://media.corporate-ir.net/media_files/IROL/10/108017/marriottAR17/fact-sheet.html and http://investor.sareholder.com/mar/marriottAR16/fact-sheet.html (last visited Nov. 30, 2018).

[6]     *See* https://www.marriott.com/culture-and-values/core-values.mi (last visited Nov. 30, 2018).

[7]     *See* https://www.marriott.com/about/privacy.mi (*last visited* Nov. 30, 2018).

measures to protect Personal Data" and that Marriot has "certified to the EU-U.S. and Swiss-U.S. Privacy Shield frameworks."[8]

17.     Marriott's representations regarding its data security efforts were false.

**B.     Marriott and the Hotel Industry Were on Notice of a Heightened Data Breach Risk**

18.     Prior to Marriott's November 30, 2018 Data Breach announcement, numerous articles identified the heightened risk of data breaches faced by hotels and the hospitality industry.

19.     For example, a January 12, 2018 article written by Robert E. Braun, co-chair of the Cybersecurity and Privacy Law Group at Jeffer Mangels Butler & Mitchell LLP, and published in the Hotel Business Review, explained that, "as soon as there were data breaches, hotels became a prime target of hackers, and the hospitality industry has consistently been one of the most commonly targeted businesses.  Since 2010, hotel properties ranging from major multinational corporations to single location hotels have been impacted."[9]  The article went on to state that, "Trustwave's 2016 Global Security Report reported that 14% of the incidences investigated by Trustwave originated at hotels – the second largest share of data breaches, followed closely by the food and beverage industry."[10]  Critically, the article warned that "the hospitality industry

---

[8]     The EU-U.S. and Swiss-U.S. Privacy Shield Frameworks were designed by the U.S. Department of Commerce and the European Commission and Swiss Administration to provide companies on both sides of the Atlantic with a mechanism to comply with data protection requirements when transferring personal data from the European Union and Switzerland to the United States in support of transatlantic commerce.

[9]     *See* Robert E. Braun, *Cyberattacks on Hotels — What Should Hotel Owners and Operators Do?*,     Hotel     Business     Review     *available     at* https://cybersecurity.jmbm.com/2018/01/12/cyberattacks-hotels-hotel-owners-operators/? utm_source=Mondaq&utm_medium=syndication&utm_campaign=View-Original   (last   visited Nov. 30, 2018).

[10]    *Id.*

possesses a number of factors that make them attractive to hackers: large volumes of valuable information, multiple vectors for accessing information, large workforces and dependence on vendors, to name a few."[11]

20.     A January 8, 2018 article by AXA's Brooke Gartner, a Claims Specialist in Cyber & Technology, explained that "Between May 2014 and December 2015, six high-profile companies within the hospitality industry suffered customer data breaches. Malware, compromised card processing systems, gift shop point-of-sale registers, and hotel payment systems were all to blame for the spate of breaches."[12]   The article went on to state that, "methods of reaching customers on many levels has become more than touch points in a customer service process – they have become vulnerabilities that could result in serious cyber breaches."[13]

21.     Furthermore, according to Verizon's 2018 Data Breach Investigations Report, over 94% of all point of sale data breaches occurred at hotels.[14]   This number is up from the 92% identified in Verizon's 2017 Data Breach Investigations Report.[15]

22.     According to Edward Hasbrouck, a San Francisco-based travel writer and consumer advocate who has long warned about the sensitivity and poor security of computerized

---

[11]   *Id.*

[12]   *See* Brooke Gartner, AXA XL Insurance, *Are hotels and hospitality more vulnerable to breach?*, *available at* https://axaxl.com/fast-fast-forward/articles/are-hotels-and-hospitality-more-vulnerable-to-cyber-breach (*last visited on* November 30, 2018).

[13]   *Id.*

[14]   *See* Verizon, 2018 Data Breach Investigations Report, 11th edition, p. 26 *available at* https://enterprise.verizon.com/resources/reports/dbir/ (last visited Nov. 30, 2018).

[15]   *See* Verizon, 2017 Data Breach Investigations Report, 10th edition, p. 10 *available at* https://www.ictsecuritymagazine.com/wp-content/uploads/2017-Data-Breach-Investigations-Report.pdf (last visited Nov. 30, 2018).

travel records, "The travel industry has been grossly negligent compared to many industries when it comes to data privacy and security."[16]

23.     Despite such public information putting Marriot on notice of the heightened risk of data breaches faced by hotels and the hospitality industry, Marriott failed to take adequate steps to protect its customer's Personal Information.

**C.     Starwood's History of Personal Information Problems**

24.     This is not the first time Starwood customers' Personal Information has been exposed in a data breach.

25.     In November 2015, prior to Marriott's acquisition of Starwood, Starwood announced "that malware designed to help cyber thieves steal credit and debit card data was found on point-of-sale cash registers at some of the company's hotels in North America."[17]

26.     In relation to the November 2015 Starwood breach, Starwood published a list of more than 75 of its hotel properties, mostly Sheraton and Westin locations across the United States and Canada, that were impacted by the breach.[18]

27.     In a January 22, 2016 letter to Starwood customers, Starwood's then-President, Sergio Rivera, wrote: "We sincerely regret any inconvenience this may cause. We take our

---

[16]   *See*   https://www.washingtonpost.com/business/2018/11/30/marriott-discloses-massive-data-breach-impacting-million-guests/?noredirect=on&utm_term=.dd6e50615fbc (last visited Dec. 30, 2018).

[17]   *See*   https://krebsonsecurity.com/2015/11/starwood-hotels-warns-of-credit-card-breach/   (last visited Nov. 30, 2018).

[18]   *See* https://www.starwoodhotels.com/Media/PDF/Corporate/Hotel_List.pdf (last visited Nov. 30, 2018).

obligation to safeguard personal information very seriously and are alerting affected customers about this incident so they can take steps to help protect their information."[19]

28.    This 2015 data breach put Marriott on notice of the heightened risk of data breaches faced by hotels and the hospitality industry, and specifically by Starwood, yet Marriott failed to take adequate steps to protect its customer's Personal Information.

**D.    The Data Breach**

29.    On November 30, 2018, Marriott announced that hackers had broken into the Database, which contained the Personal Information of about 500 million guests.

30.    The Personal Information that was stolen as a result of Marriot's failures includes customer names, mailing addresses, phone numbers, email addresses, passport numbers, SPG account information, dates of birth, genders, arrival and departure information, reservation dates, and payment card numbers and expiration dates.  This is extraordinarily intimate data that includes rarer prizes for hackers, such as passport numbers, travel locations and arrival and departure dates.

31.    The Data Breach affects all guests who stayed at a Starwood property, which includes W Hotels, St. Regis, Sheraton Hotels & Resorts, Westin Hotels & Resorts, Element Hotels, Aloft Hotels, The Luxury Collection, Tribute Portfolio, Le Méridien Hotels & Resorts, Four Points by Sheraton and Design Hotels, and even Starwood branded timeshare properties.

32.    The victims of the Breach are not limited to those customers enrolled in Marriott's SPG program.  According to Marriott, "[r]egardless of whether you are an SPG member, if you

---

[19]   *See*
https://www.starwoodhotels.com/html/HTML_Blocks/Corporate/Confidential/Letter.htm?
EM=VTY_CORP_PAYMENTCARDSECURITYNOTICE (last visited Nov. 30, 2018).

made a reservation on or before September 10, 2018 for a Starwood property, information you provided may have been involved."[20]

33.     Shockingly, Marriott's announcement revealed that the unauthorized access to its Database *began in 2014* and, thus, had gone on (allegedly) undetected for *four years*.

34.     It is not clear, based on publicly available information or through statements made by Marriott, when Marriott first became aware of the breach, although Marriott claims that it was first alerted to the Data Breach on September 8, 2018.[21]   Nevertheless, what is clear is that Marriott was aware of the Data Breach well before the November 30, 2018 disclosure date but failed to timely disclose the breach to its customers.

35.     The Federal Bureau of Investigation is investigating the Data Breach, as are the Attorneys General of New York, Maryland, and Pennsylvania.[22]

### E.     Marriott Failed to Implement Basic Security Measures that Would Have Prevented the Data Breach

36.     On information and belief, Marriott failed to implement reasonable, industry-standard, or appropriate security measures and knowingly, recklessly, or negligently left its customers' Personal Information, including that of Plaintiffs and the other Class members, inadequately protected and vulnerable to one of the largest cyber-attacks and data thefts in U.S. history.

---

[20]   *See* https://answers.kroll.com/ (last visited Dec. 1, 2018).

[21]   *See*          http://news.marriott.com/2018/11/marriott-announces-starwood-guest-reservation-database-security-incident/ (last visited Dec. 30, 2018).

[22]   *See*   https://www.washingtonpost.com/business/2018/11/30/marriott-discloses-massive-data-breach-impacting-million-guests/?utm_term=.bde4c66e50ae (last visited Nov. 30, 2018).

37.     On information and belief, among Marriott's failures in this respect included its failure to maintain adequate backups and/or redundant systems; failure to encrypt data and establish adequate firewalls to handle a server intrusion contingency; and failure to provide prompt and adequate warnings of security breaches.

38.     Indeed, Marriott's November 30, 2018 announcement also included a clear admission by the company's CEO that Marriott's conduct fell well below the expected standard of care: "We fell short of what our guests deserve and what we expect of ourselves.  We are doing everything we can to support our guests, and using lessons learned to be better moving forward."[23]

F.      **Marriott Knew or Should Have Known That the Database Was Vulnerable to Attack**

39.     Marriott knew or should have known that its below industry-standard security systems and unreasonably vulnerable technologies would render the Database an aim of attack by third-parties.

40.     Despite the ever-existing threat of a security breach, particularly ones targeting the hospitality industry, Marriott recklessly, negligently, and unreasonably failed to implement adequate safeguards to protect the Database, and failed to take steps to protect Plaintiffs' and the other Class members' Personal Information stored on the Database.

G.      **The Importance of Protecting Personal Information**

41.     Consumers have a vested interest in protecting all of their confidential or private information, ranging from their addresses, dates of birth, bank account information, credit card information, debit card information, social security numbers, asset information, employment information and other Personal Information.

---

[23] *See*      http://news.marriott.com/2018/11/marriott-announces-starwood-guest-reservation-database-security-incident/ (last visited Dec. 1, 2018).

Case 1:18-cv-03724-GJH   Document 1   Filed 12/03/18   Page 13 of 28

42.     The significant impact identity theft can have on consumers, and the extreme financial ramification the failure to secure personal information can cause, has led to the enactment of numerous privacy-related laws aimed at protecting consumer information and requiring timely disclosures of any breach, including, for example: (1) Maryland Personal Information Protection Act, MD Code, Commercial Law, § 14-3501, *et seq.*; (2) Gramm-Leach-Bliley Act; (3) Fair Credit Reporting Act; (4) Fair and Accurate Credit Transactions Act; (5) Federal Trade Commission Act, 15 U.S.C. §§41-58; (6) Driver's Privacy Protection Act; (7) HIPPA; (8) The Privacy Act of 1974; (9) Social Security Act Amendments of 1990; (10) E-Government Act of 2002; and (11) Federal Information Security Management Act of 2002.

43.     Protection of consumers' private information is obviously critical.  And as Sen. Edward J. Markey put it, "Checking in to a hotel should not mean checking out of privacy and security protections[.]"[24]

44.     Consumers are at the mercy of the security measures or controls utilized by those entities that use or maintain their confidential or private information.  Consumers, likewise, have no ability to ascertain whether their private information is being adequately protected or, worse, if their private information has been compromised, in any way.  Where, as here, Personal Information is and has been inadequately protected, and the entity maintaining that information conceals the inadequate safety measures and the possibility that a breach occurred or is occurring, consumers become highly vulnerable to identity theft and are hamstrung in their ability to timely react to protect themselves from identity theft following a data breach.

---

[24]   https://www.washingtonpost.com/business/2018/11/30/marriott-discloses-massive-data-breach-impacting-million-guests/?noredirect=on&utm_term=.dd6e50615fbc (last visited Dec. 1, 2018).

**H.      Marriott's Failure Have Harmed Plaintiffs and the Other Class Members**

45.     As a result of the Data Breach, Plaintiffs and the Other Class members were deprived of the value in their Personal Information and now face an increased risk of identity theft identity theft, and the constant fear, anxiety, and hardship that comes with it, as well as lost time and money required to take steps to protect themselves from identity theft.

46.     Indeed, Personal Information is a valuable commodity.  A "cyber black-market" exists in which criminals openly sell and trade stolen credit card numbers and other personally identifiable information on a number of Internet websites, including on the heavily encrypted "Dark Web," which is difficult for authorities to monitor.

47.     The minimally necessary steps to mitigate (but not eliminate) the threat of identity theft faced by Plaintiffs and the Class members are time-consuming and burdensome.  Plaintiffs and the Class members will be forced to replace their credit and debit cards and to update their payment information on all automatic payment accounts, and victims must add themselves to credit fraud watch lists, which substantially impairs their ability to obtain additional credit. Immediate notice of the Data Breach (which Marriott failed to provide) was essential to obtain the best protection afforded by these services.

48.     Marriott claims that is providing its guests with a free enrollment in WebWatcher for one year.  Marriott states that "WebWatcher monitors internet sites where personal information is shared and generates an alert to the consumer if evidence of the consumer's personal information is found."[25]  But a single year of monitoring – without any insurance against identity theft – is woefully insufficient to protect Plaintiffs and the Class members from the harm Marriott caused

---

[25]   https://answers.kroll.com/ (last visited Dec. 1, 2018).

because Personal Information can exist on the Dark Web for years before it is used to steal a person's identity.  Moreover, WebWatcher is not available in all countries.

### I.      Impact of the Breach of Plaintiffs

49.     Plaintiffs are Starwood Preferred Guests whose American Express credit card is linked to their Starwood Preferred Guest account.

50.     Plaintiffs have made reservations for and stayed at multiple Starwood properties for many years.

51.     Plaintiffs' SPG account includes, but is not limited to, their name, mailing address, phone number, email address, SPG account information, date of birth, genders, arrival and departure information, reservation dates, and American Express card number and expiration date.

52.     Plaintiffs believed that Marriot took all reasonable, necessary, legally required, and industry standard security measures to protect her Personal Information, and that her Personal Information would remain private.

53.     As a result of Marriott's failure to protect their Personal Information, Plaintiffs suffered injuries and damages, including, but not limited to, loss in value of their Personal Information, an increased risk of identity theft, and loss of time and money spent to protect themselves from the foreseeable risk of fraud and identify theft

### CLASS ACTION ALLEGATIONS

54.     Plaintiffs bring this class action under Federal Rules of Civil Procedure 23(a), 23(b)(2), 23(b)(3), and/or 23(c)(4), on behalf of themselves and all others similarly situated as members of the following classes:

> **All persons in the State of Maryland who provided personal information to Marriott and whose personal information was compromised or accessed as a result of the data breach first disclosed by Marriott International, Inc. on November 30, 2018 (the "Maryland Class").**

**All persons in the United States who provided personal information to Marriott and whose personal information was compromised or accessed as a result of the data breach first disclosed by Marriott International, Inc. on November 30, 2018 (the "Nationwide Class," together with the Maryland Class, the "Classes").**

55.     Subject to additional information obtained through further investigation and discovery, the foregoing definition of the Classes may be expanded or narrowed by amendment or amended complaint.   Specifically excluded from the proposed Classes are the Defendant, its officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees, principals, servants, partners, joint venturers, or entities controlled by the Defendant, and their heirs, successors, assigns, or other persons or entities related to or affiliated with the Defendant and/or their officers and/or directors, or any of them; the Judge assigned to this action, and any member of the Judge's immediate family.

56.     ***Numerosity.***   The members of the Classes are so numerous that their individual joinder is impracticable.   Plaintiffs are informed and believe, and on that basis allege, that the proposed Classes contain many millions of members.   The precise number of Class members is unknown to Plaintiffs.   The true number of Class members is known by the Defendant, however, and thus, class members may be notified of the pendency of this action by first class mail, electronic mail, and/or by published notice.

57.     ***Existence and Predominance of Common Questions of Law and Fact.***   Common questions of law and fact exist as to all members of the Classes and predominate over any questions affecting only individual Class members.   These common legal and factual questions include, but are not limited to, the following:

(a)     whether Marriott engaged in the wrongful conduct alleged herein;

(b)     whether Marriott owed a legal duty to Plaintiffs and the other Class members to exercise due care in collecting, storing, and safeguarding their Personal Information;

(c)     whether Marriott negligently or recklessly breached legal duties owed to Plaintiffs and the other Class members to exercise due care in collecting, storing, and safeguarding their Personal Information;

(d)     whether Marriott failed to implement and maintain reasonable securities practices and procedures to protect against the Data Breach;

(e)     whether Marriott's conduct was negligent or willful;

(f)     whether Marriott was unreasonable in its delay of notifying affected customers of the Data Breach;

(g)     whether Plaintiffs and the other Class members are entitled to actual, statutory, punitive, or other forms of damages, and other monetary relief; and

(h)     whether Plaintiffs and the other Class members are entitled to equitable relief, including, but not limited to, injunctive relief and restitution.

58.     *Typicality.*  Plaintiffs' claims are typical of the claims of the other Class members because, among other things, Plaintiffs and the other Class members were injured through the substantially uniform misconduct described above.  Plaintiffs herein is advancing the same claims and legal theories on behalf of herself and all other Class members, and there are no defenses available to Marriott that are unique to Plaintiffs.

59.     *Adequacy of Representation.*  Plaintiffs will fairly and adequately protect the interests of the members of the Classes.  Plaintiffs have retained counsel highly experienced in complex consumer class action litigation, and Plaintiffs intend to prosecute this action vigorously. Plaintiffs have no adverse or antagonistic interests to those of the Classes.

60.     *Superiority.*  A class action is superior to all other available means for the fair and efficient adjudication of this controversy.  The damages or other financial detriment suffered by

individual Class members is outweighed by the burden and expense that would be entailed by individual litigation of their claims against Defendant.  It would thus be virtually impossible for the Classes, on an individual basis, to obtain effective redress for the wrongs done to them. Furthermore, even if Class members could afford such individualized litigation, the court system could not.  Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts.  Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action.  By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances here.

61.     In addition, the Classes may be also certified because:

(a)     the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudication with respect to individual Class members that would establish incompatible standards of conduct for the Defendant;

(b)     the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and/or

(c)     Defendant has acted or refused to act on grounds generally applicable to the Classes thereby making appropriate final declaratory and/or injunctive relief with respect to the members of the Classes as a whole.

62.     In the alternative, certain issues presented in this action are suitable for certification under Fed. r. Civ. P. 23(c)(4).

## COUNT I

### Negligence
### On Behalf of the Classes

63.     Plaintiffs repeat, reallege, and incorporate by reference the allegations contained above, as though fully stated herein.

64.     Marriott owed a duty to Plaintiffs and the other Class members to exercise reasonable care in safeguarding and protecting their Personal Information in its possession from being compromised, lost, stolen, misused, and or/disclosed to unauthorized parties.  This duty included, among other things, designing, maintaining, and testing Marriott's security systems to ensure that Plaintiffs' and the other Class members' Personal Information in Marriott's possession was adequately secured and protected.  Marriott further had a duty to implement processes that would detect a breach of its security system in a timely manner.

65.     Marriott also had a duty to timely disclose to Plaintiffs and the other Class members that their Personal Information had been, or was reasonably believed to have been, compromised. Timely disclosure was necessary so that, among other things, Plaintiffs and the other Class members could take appropriate measures to avoid unauthorized charges to their credit/debit card accounts, cancel or change usernames and passwords on compromised accounts, and monitor their account information and credit reports for fraudulent activity.

66.     Marriott breached its duty to exercise reasonable care in safeguarding and protecting Plaintiffs' and the other Class members' Personal Information in its possession by failing to adopt, implement, and maintain adequate security measures to safeguard Plaintiffs' and the other Class members' Personal Information; failing to adequately monitor the security of the Database; allowing unauthorized access to Plaintiffs' and the other Class members' Personal

Information stored on the Database; and failing to recognize in a timely manner that the Database had been breached.

67.     Marriott breached its duty to timely disclose that Plaintiffs' and the other Class members' Personal Information in its possession had been, or was reasonably believed to have been, stolen or compromised.

68.     But for Marriott's wrongful and negligent breach of its duties owed to Plaintiffs and the other Class members, their Personal Information would not have been compromised, and they would not have suffered the injury and damages alleged herein.

69.     The injury and harm suffered by Plaintiffs and the other Class members was the reasonably foreseeable result of Marriott's failure to exercise reasonable care in safeguarding and protecting Plaintiffs' and the other Class members' Personal Information within its possession. Marriott knew or should have known that its systems and technologies for processing and securing Plaintiffs' and the other Class members' Personal Information had security vulnerabilities.

70.     As a result of Marriott's negligence, Plaintiffs and the other Class members incurred economic damages relating to expenses for credit monitoring and loss of use of their credit, debit, or bank cards.

## COUNT II

### Unjust Enrichment
### On Behalf of the Classes

71.     Plaintiffs repeat, reallege, and incorporate by reference the allegations contained above, as though fully stated herein.

72.     Plaintiffs and the other Class members conferred benefits on Marriott by paying for accommodations.

73.     Marriott knowingly and willingly accepted monetary benefits paid for the accommodations by Plaintiffs and the other Class members, but failed to honor its obligations to them, including the protection of their Personal Information.

74.     Under the circumstances described herein, it is inequitable for Marriott to retain the monetary benefits at the expense of Plaintiffs and the other Class members.

75.     By engaging in the conduct described above, Marriott has been unjustly enriched at the expense of Plaintiffs and the other Class members.  Under the circumstances, it would be contrary to equity and good conscience to permit Marriott to retain the ill-gotten benefits that Marriott received in light of the violations of law detailed herein.

76.     As a result of Marriott's unjust enrichment, Plaintiffs and the other Class members have suffered injury and are entitled to reimbursement, restitution, and disgorgement by Marriott of the benefit conferred by Plaintiffs and the other Class members.

## COUNT III

### Breach of Implied Contract
### On Behalf of the Classes

77.     Plaintiffs repeat, reallege, and incorporate by reference the allegations contained above, as though fully stated herein.

78.     The Personal Information of Plaintiffs and the Class members was provided to Marriott in exchange for accommodations provided by Marriott.  Explicit and implicit in this transaction was a covenant for Marriott to undertake reasonable efforts to safeguard, protect, and secure this information.  Also implicit in this transaction was a covenant for Marriott to promptly notify its customers in the event that this information was compromised or at risk.

79.     Marriott's recognition of these covenants and obligations is implicit in its representations to Plaintiffs and the Class regarding the importance of maintaining security measures to protect Personal Information.

80.     This implied contract required Marriott to safeguard the Personal Information of Plaintiffs and the Class and prevent that information from being compromised and/or stolen.

81.     Marriott did not safeguard and protect the private and confidential information of Plaintiffs and the Class and failed to adequately prevent that information from being compromised or available for unauthorized dissemination.  To the contrary, Marriott allowed, and continues to allow, this information to be disclosed to unauthorized parties.

82.     As a result, Marriott breached its implied contract with Plaintiffs and the Class, thereby causing injury to Plaintiffs and the Class.

## COUNT IV

### Bailment
### On Behalf of the Classes

83.     Plaintiffs repeat, reallege, and incorporate by reference the allegations contained above, as though fully stated herein.

84.     Plaintiffs and the other Class members delivered and entrusted their Personal Information to Marriott for the sole purpose of obtaining certain accommodations.

85.     During the time of bailment, Marriott owed Plaintiffs and the other Class members a duty to safeguard their Personal Information stored on the Database by maintaining reasonable security procedures and practices to protect such information.  As alleged herein, Marriott breached this duty.

86.     As a result of Marriott's breach of this duty, Plaintiffs and the other Class members have been harmed as alleged herein.

**COUNT V**

**Violations of the Maryland Consumer Protection Act
(Md. Code Com. Law Section 13-101, *et seq.*)
On Behalf of the Classes**

87.     Plaintiffs repeat, reallege, and incorporate by reference the allegations contained above, as though fully stated herein.

88.     Plaintiffs bring this claim pursuant to the Maryland Consumer Protection Act, Md. Code Com. Law §13-101, *et seq.* ("MCPA").

89.     Marriott, Plaintiffs, and the Classes are "persons" within the meaning of Md. Code Com. Law §13-101(h).

90.     The MCPA provides that a person may not engage in any unfair or deceptive trade practice in the sale of any consumer good.  Md. Code Com. Law §13-303.  Marriott participated in misleading, false, or deceptive acts that violated the MCPA.

91.     It is also a violation of the MCPA to violate the Maryland Personal Information Protection Act.  Md. Code Ann., Com. Law §14-3508.

92.     In the course of Marriott's business, Marriott intentionally concealed and suppressed facts concerning its failures to secure its customer's Personal Information, as well as facts concerning the Data Breach.

93.     Plaintiffs and members of the Classes had no way of discerning that Marriott's representations were false and misleading until the November 30, 2018 announcement of the Data Breach.  Thus, acting reasonably, Plaintiffs and members of the Classes did not and could not unravel Marriott's deception.

94.     Marriott's actions as set forth above occurred in the conduct of trade or commerce.

95.     The MCPA provides that "[t]his title shall be construed and applied liberally to promote its purpose.  It is the intent of the General Assembly that in construing the term 'unfair or

deceptive trade practices', due consideration and weight be given to the interpretations of §5(a)(1) of the Federal Trade Commission Act by the Federal Trade Commission and the federal courts." Md. Code Com. Law §13-105.

96.     Marriott intentionally and knowingly misrepresented material facts regarding its efforts to secure its customer's Personal Information, as well as facts concerning the Data Breach, with an intent to mislead Plaintiffs and members of the Classes.

97.     Marriott knew or should have known that its conduct violated the MCPA.

98.     Marriott's promise of securing its customer's Personal Information was material to Plaintiffs and members of the Classes.

99.     Marriott's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs and the Classes, about the true, undisclosed facts surrounding its efforts to secure its customer's Personal Information.

100.    Marriott also committed a violation of the Maryland Personal Information Protection Act, as alleged below, by negligently and recklessly failing to provide Plaintiffs and members of the Classes reasonable and adequate security measures, and unreasonably delaying informing Plaintiffs and members of the Classes about the Data Breach, after Marriott had first learned that the Data Breach occurred.

101.    Plaintiffs and members of the Classes suffered ascertainable losses and actual damages as a direct and proximate result of Marriott's misrepresentations and its concealment of and failure to disclose material information.

102.    Marriott had an ongoing duty to all Marriott customers to refrain from unfair and deceptive practices under the MCPA.

103.     Marriott's violations present a continuing risk of deception to Plaintiffs as well as to the general public.  Marriott's unlawful acts and practices complained of herein affect the public interest.

104.     As a direct and proximate result of Marriott's violations of the MCPA, including by violating the Maryland Personal Information Protection Act, Plaintiffs and members of the Classes have suffered injury-in-fact and/or actual damage.

105.     Pursuant to Md. Code Com. Law §13-408, Plaintiffs and members of the Classes seek actual damages, attorneys' fees, and any other just and proper relief available under the MCPA.

## COUNT VI

### Violations of the Maryland Personal Information Protection Act
### (Md. Code Com. Law Section 14-3501, *et seq.*)
### On Behalf of the Classes

106.     Plaintiffs repeat, reallege, and incorporate by reference the allegations contained above, as though fully stated herein.

107.     The Data Breach constituted a "breach of the security of a system" within the meaning of Md. Code Com. Law §14-3504(a)(1) which is viewed as an unfair or deceptive trade practice.

108.     A violation of the Maryland Personal Information Protection Act is also "an unfair or deceptive trade practice within the meaning of Title 13 of this article"  Md. Code Ann., Com. Law §14-3508.

109.     Marriott negligently and recklessly failed to provide Plaintiffs and members of the Classes reasonable and adequate security measures.   Marriott also unreasonably delayed in informing the Plaintiffs and members of the Classes about the Data Breach, after Marriott had first learned that the Data Breach occurred.

110.    As a result of Marriott's conduct, Plaintiffs and members of the Classes have incurred and will incur economic damages related to the expenses for credit monitoring and other related actions to protect their Personal Information.  Plaintiffs and members of the Classes would not have purchased accommodations from Marriott had they known their Personal Information would not be adequately protected.

111.    Pursuant to Md. Code Com. Law §14-3508, Plaintiffs and members of the Maryland Class seek actual damages, attorneys' fees, and any other just and proper relief available.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the other Class members, respectfully request that this Court enter an Order:

A.    Certifying the Class under Federal Rule of Civil Procedure 23(a), 23(b)(2), and 23(b)(3), appointing Plaintiffs as Class Representative, and appointing their undersigned counsel as Class Counsel;

B.    For an award of equitable, injunctive and declaratory relief described herein, including judicial supervision of Defendant and a judicial determination of the rights and responsibilities of the parties regarding the remains that are the subject to this action;

C.    Finding that Marriott's conduct was negligent, deceptive, unfair, and unlawful as alleged herein;

D.    Enjoining Marriott from engaging in the negligent, deceptive, unfair, and unlawful business practices alleged herein;

E.    Awarding Plaintiffs and the other Class members actual, compensatory, and consequential damages;

F.    Awarding Plaintiffs and the other Class members statutory damages;

G.    Awarding Plaintiffs and the other Class members punitive damages;

H.      Awarding Plaintiffs and the other Class members restitution and disgorgement;

I.      Requiring Marriott to provide appropriate credit monitoring services to Plaintiffs and the other Class members;

J.      Awarding pre-judgment and post-judgment interest;

K.      Awarding reasonable attorneys' fees and costs, including expert witness fees; and

L.      Granting such other relief as the Court deems just and proper.

## JURY TRIAL DEMANDED

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of all claims in this Class Action Complaint so triable.

DATED:  December 3, 2018                    SILVERMAN THOMPSON SLUTKIN
                                                                    & WHITE LLC


                                                         /s/ Steven D. Silverman
                                                   STEVEN D. SILVERMAN (Bar No. 22887)
                                                   ssilverman@mdattorney.com
                                                   JOSEPH F. MURPHY, JR. (Bar No. 00659)
                                                   jmurphy@mdattorney.com
                                                   ANDREW C. WHITE (Bar No. 08821)
                                                   awhite@mdattorney.com
                                                   WILLIAM N. SINCLAIR (Bar No. 28833)
                                                   bsinclair@mdattorney.com
                                                   201 N. Charles Street, 26th Floor
                                                   Baltimore, Maryland 21201
                                                   Telephone: 410/385-2225
                                                   410/547-2432 (fax)

ROBBINS GELLER RUDMAN
  & DOWD LLP

STUART A. DAVIDSON
(*Pro Hac Vice* Pending)
sdavidson@rgrdlaw.com
CHRISTOPHER C. GOLD
(*Pro Hac Vice* Pending)
cgold@rgrdlaw.com
DORY P. ANTULLIS
(*Pro Hac Vice* Pending)
dantullis@rgrdlaw.com
120 East Palmetto Park Road, Suite 500
Boca Raton, FL  33432
Telephone:  561/750-3000
561/750-3364 (fax)

SAMUEL H. RUDMAN
(*Pro Hac Vice* Pending)
srudman@rgrdlaw.com
MARK S. REICH
(*Pro Hac Vice* Pending)
mreich@rgrdlaw.com
WILLIAM J. GEDDISH
(*Pro Hac Vice* Pending)
wgeddish@rgrdlaw.com
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)

*Attorneys for Plaintiffs and the Classes*